O'BRIEN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Trial Term, Ontario County.   October 30, 1909.)

1. RAILROADS (§ 360*)—OPERATION OF TRAINS—SIGNALS—NEGLIGENCE.

A railroad must give a timely warning of the approach of its trains at crossings, and it is not negligent in so doing, unless it abuses the privilege as to sounding whistles, with a wanton disregard of the rights of people using the highways.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1241–1244; Dec. Dig. § 360.*]

2. RAILROADS (§ 398*)—OPERATION OF TRAINS—SIGNALS—NEGLIGENCE.

In an action for injuries by a runaway horse, frightened by a railroad whistle at a highway crossing, evidence *held* not to support a finding of negligence in sounding the whistle.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 398.*]

Action by Frank O'Brien against the New York Central & Hudson River Railroad Company.  Verdict for plaintiff.  Motion by defendant for a new trial on all the grounds specified in Code Civ. Proc. § 999.  Granted.

N. D. Lapham, for plaintiff.

Harris, Havens, Beach & Harris, for defendant.

CLARK, J.   The jury rendered a verdict in favor of the plaintiff in this action for $6,000 at the Ontario Trial Term in October, 1909. The plaintiff was injured while working on the highway by a runaway horse, and charges that the horse was frightened by the defendant negligently sounding its locomotive whistle.   At the point where plaintiff was working in the highway, defendant's tracks are about 60 feet away and run parallel with the highway.   Plaintiff was driving a team attached to a plow, and facing in an easterly direction, and the train in question had just left Shortsville, proceeding westerly.   There was a freight train on the siding facing east, and waiting for the passenger train to go west, and the caboose of this freight train was just about opposite the plaintiff as he was working in the highway.

About the time the train passed plaintiff he heard the regular crossing whistle given for the highway crossing some distance westerly, and it is the contention of the plaintiff that after the regular crossing whistle was given it was followed by six or eight short, sharp blasts of the whistle, commonly known as a danger signal.   At this time a boy about 16 years old, named Fay Bixler, was driving a delivery wagon, and had just come out on the highway and was starting toward Shortsville, when he claims the whistle was blown by the passenger train engine. He said that he heard the crossing whistle and his horse paid no attention to it.   Immediately following the crossing whistle he testified there were six or eight short, sharp whistles given, and that his horse pricked up his ears and ran away, going toward O'Brien, the plaintiff. The plaintiff's back was toward the runaway horse, and as the latter approached him the wagon to which he was attached hit plaintiff and he was injured.

Several witnesses testified that they heard these whistles; that they looked up the track, and saw no obstruction, and nothing to indicate

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

why the whistles were given; but no person excepting this boy testified that the horse was frightened at the danger signals. This young man contradicted himself considerably, and in view of these contradictions his evidence as to what frightened the horse was far from satisfactory. This was a western horse, and in the habit of running away, and the boy, Bixler, undertook to draw a pretty fine distinction between the whistles that frightened the horse, claiming to be positive that the regular crossing whistles had no effect on the horse, whereas the short blasts, given immediately after, were the occasion for the whole trouble.

As against this statement, a wholly disinterested witness, Mr. Lyndquist, produced by the plaintiff, testified that he saw the horse coming, that he heard two long and two short whistles, and he thinks the whistle blew some after that, but was not positive; but he did testify positively that, when the two long and two short blasts were blown, the horse started to prance and rear, and then ran away. So, on the point as to what particular whistles frightened the horse, the young boy who was driving, often contradicting himself in his evidence, and manifestly greatly interested, alone testified that it was the danger whistles which frightened the horse; whereas Mr. Lyndquist, one of plaintiff's witnesses and wholly disinterested, testified that he saw the whole transaction, and that the horse became frightened at the regular crossing signal, and if that is true, of course, there could be no recovery here.

It is a very common thing for railroad corporations to be charged with negligence for failure to sound whistles; but the instances are quite rare where they are called upon to respond in damages for sounding too many whistles. This defendant had a right to operate its train, it was its duty to give timely warning of its approach to a highway crossing, and it could not be charged with negligence unless it affirmatively appeared that it abused that privilege as to sounding whistles, and sounded them unnecessarily and with a wanton disregard of the rights of people having occasion to use the highway. Phillips v. N. Y. C. R. R. Co., 84 Hun, 412, 32 N. Y. Supp. 299; Mayer v. N. Y. C. R. R. Co., 55 Hun, 608, 8 N. Y. Supp. 461.

The law was fully and carefully explained to the jury, but no attention seems to have been paid to it in this matter, because, if there had been, the jury could not have rendered this verdict, and I am satisfied that it was the result of misapprehension, both as to the law and the facts, or else it was the result of partiality, passion, and prejudice. While the plaintiff was seriously injured, and that fact is to be deeply regretted, still the finding that this defendant was negligent, and abused its privileges as to sounding whistles, was against the weight of evidence. I am so clearly convinced of this, and that the jury misapprehended the law as it was plainly stated to them, and that actual injustice has been done in this case, that I feel obliged to set aside this verdict.

The motion is granted, with $10 costs to abide the event. An order may be entered accordingly.